UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD MINNESOTA, NORTH DAKOTA, SOUTH DAKOTA and SARAH A. TRAXLER, M.D., <br><br> Plaintiffs, <br><br> vs. <br><br> KRISTI NOEM, Governor, in official capacity; JOAN ADAM, Interim Secretary of Health, Department of Health, in official capacity; PHILIP MEYER, D.O.; President, South Dakota Board of Medical and Osteopathic Examiners, in official capacity, <br><br> Defendants. | 4:22-CV-04009-KES <br><br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |

Plaintiffs, Planned Parenthood Minnesota, North Dakota, South Dakota and Sarah A. Traxler, M.D. (Planned Parenthood), move under Federal Rule of Civil Procedure 65 for a temporary restraining order and preliminary injunction against part of South Dakota Administrative Rule 44:67:04:13 (Jan. 27, 2022). Docket 3. For the following reasons, the court grants Planned Parenthood's motion for a temporary restraining order.

## BACKGROUND

Planned Parenthood is a non-profit that operates a clinic in Sioux Falls, South Dakota, where it offers a broad range of reproductive health services, including medication and procedural abortions. Docket 1 ¶ 18. Its Sioux Falls clinic is the only abortion provider in the state. *Id.* ¶ 23. In 2021, Planned

Parenthood performed 190 abortions at its Sioux Falls clinic, 40% of which were medication abortions. *Id.* ¶ 24.

Medication abortion requires a two-drug regimen: first, mifepristone, and 24 to 48 hours later, misoprostol. *Id.* ¶ 28. Under existing South Dakota law, a person who wishes to receive a medication abortion first must meet with a physician at the clinic to begin the informed consent process. *Id.* At least 72 hours later, the person must return to the clinic for the physician to administer mifepristone while the person is at the clinic. *Id.* During the same clinic visit, the physician dispenses the second drug, misoprostol, and instructs the person to take the misoprostol 24 to 48 hours later at a location of their choosing. *Id.* Medication abortion is preferable to a procedural abortion for some people because of the flexible timing and location it offers. *Id.* ¶ 30. For other people, a medication abortion is safer and medically indicated. *Id.* ¶ 31.

Misoprostol is available at commercial pharmacies with a prescription and can be used to treat gastric ulcers, incomplete abortions, miscarriage management, postpartum hemorrhage, and difficult IUD insertion/removal. Docket 6 ¶¶ 13, 19, 31. Use of misoprostol to address incomplete abortion, management of postpartum hemorrhage, and miscarriage management involves a higher risk of bleeding than for use in a medication abortion. *Id.* ¶ 31. The FDA has never required that misoprostol be dispensed at a clinic, even when used as part of a medication abortion. *Id.* ¶ 19. The only time a person taking misoprostol is required to have it dispensed by a physician during a separate clinic appointment is for use in a medication abortion in South Dakota Rule 44:67:04:13. *See* Docket 1-1 at 3-4.

Rule 44:67:04:13 is set to take effect on January 27, 2022. Under the Rule, a patient seeking a medication abortion would be required to make 4 clinic visits to obtain a medication abortion: first, for informed consent; second, at least 72 hours later for administration of mifepristone; third, 24 to 72 hours later for administration of misoprostol; and fourth, "a follow-up appointment . . . on the 14th day after taking the medication to confirm that the fetus, placenta, and membranes have been fully expelled." Docket 1-1. The third and fourth clinic appointments are new, additional requirements to existing South Dakota law. Planned Parenthood asks the court to enjoin "the Rule on its face and/or as applied" to Planned Parenthood and its patients. Docket 1 at 26.

## LEGAL STANDARD

When ruling on a motion for a temporary restraining order or preliminary injunction, the court must consider (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other parties; (3) the likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). When weighing these factors, "no single factor is in itself dispositive[.]" *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir. 1987). "[A]ll of the factors must be considered to determine" whether the balance weighs toward granting the injunction. *Id.*

## DISCUSSION

### I.  Likelihood of Success on the Merits

"Success on the merits has been referred to as the most important of the four factors." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir.

3

2011). When a challenged law was "implemented through legislation or regulation[] developed through presumptively reasoned democratic processes," the court analyzes whether the movant is *likely* to succeed on the merits. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc) (emphasis added) (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995) (per curium)) (noting that "likelihood of success" is a higher standard than a "fair chance" of success). "At the early stage of a [temporary restraining order] motion, the speculative nature of this particular inquiry militates against any wooden or mathematical application of the test." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

"[A] state cannot 'impose an undue burden on the woman's ability to obtain an abortion.' " *Hopkins v. Jegley*, 968 F.3d 912, 914 (8th Cir. 2020) (quoting *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2135 (2020) (Roberts, C.J., concurring)). The "threshold requirement [is] that the State [must] have a 'legitimate purpose' and that the law be 'reasonably related to that goal.' " *Id.* at 915. "So long as that showing is made . . . the only question for a court is whether a law has the 'effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.' " *Id.* (quoting *Russo*, 140 S. Ct. at 2138).

Planned Parenthood argues that the third clinic appointment for the administration of misoprostol under the Rule imposes a substantial obstacle for people seeking a medication abortion. Docket 4 at 15-23. First, Planned Parenthood points to the personal and financial obstacles presented by a third clinic visit. In 2021, 31% of the patients who sought a medication abortion had income below 110% of the federal poverty line. Docket 5 ¶ 45. Of the patients

4

seeking a medication abortion, about 24% travel more than 150 miles to reach the Sioux Falls clinic and return home, and 11% travel more than 300 miles per trip. *Id.* ¶ 41. Many of the patients who seek abortions have another child or children who need care and have other obligations such as school and/or jobs; some are single parents. Docket 1 ¶ 34. These obligations could prevent a patient from completing the required sequence of clinic appointments for a medication abortion, or they could make the patient choose to travel to the clinic to the detriment of necessary personal, family, and financial obligations, like child care or work. Making arrangement for support of these obligations while traveling to the clinic poses yet an additional obstacle. Because people seeking an abortion in South Dakota must already travel to the Sioux Falls clinic twice, requiring a third appointment would further compound the financial and logistical obstacles, Planned Parenthood argues.

 Planned Parenthood also points out that some people who seek an abortion wish to conceal the abortion from an abusive partner or family member. *Id.* ¶ 30. For these patients, medication abortion resembles a miscarriage and makes the process easier to conceal. *Id.* Requiring a third clinic appointment puts the confidentiality of the abortion at risk and thus risks the patient's safety and well-being in an abusive domestic environment.

 At this stage, Planned Parenthood has shown that the personal, financial, and logistical obstacles involved in traveling to the clinic for three separate appointments at regulated time intervals amounts to a substantial obstacle for a person seeking a medication abortion. And the Rule imposes a substantial obstacle for those who seek to keep a medication abortion confidential because of

5

fear of abuse. Thus, the court finds that Planned Parenthood is likely to succeed in showing that the Rule imposes an undue burden on a person's right to seek an abortion. And because Planned Parenthood has made a threshold showing that it is likely to succeed on the merits, the court proceeds to weigh the other *Dataphase* factors. *Rounds*, 530 F.3d at 732.

## II. Threat of Irreparable Harm

Under the second *Dataphase* factor, the movant must show it is "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Constitutional violations, however brief, are unquestionably irreparable." *Planned Parenthood Minn, N.D., S.D., v. Daugaard*, 799 F. Supp. 2d 1048, 1076 (D.S.D. 2011). As discussed above, Planned Parenthood has established that it is likely to succeed on the merits with regard to enjoining the Rule. Thus, the court finds that this factor, the threat of irreparable harm, weighs in favor of granting the temporary restraining order.

## III. Balance of the Hardships

The third *Dataphase* factor for obtaining a temporary restraining order requires plaintiffs to establish that their irreparable harm is greater than the hardship that a temporary restraining order would cause defendants. *Sturgis Area Chamber of Commerce v. Sturgis Rally & Races, Inc.*, 99 F. Supp. 2d 1090, 1101 (D.S.D. 2000). Because Planned Parenthood has established that it likely to succeed on the merits, people seeking a medication abortion in South Dakota would be irreparably harmed by denying the temporary restraining order and thus allowing the Rule to go into effect on January 27, 2022. "The extent of the harm if the [temporary restraining order] turns out to have been improperly granted is that

[the state] defendants will have been wrongly prevented from carrying out their official duties." *Daugaard*, 799 F. Supp. 2d at 1077.

After balancing the harm to the parties, the court finds that both parties are potentially exposed to harm if the temporary restraining order is found to have been improperly granted or denied. But when considering the nature of the parties' interest that are at stake, the potential harm to Planned Parenthood's interests are more severe because the harms directly affect a constitutional right. Thus, the court finds that the balance of the harms weighs in favor of granting the temporary restraining order.

## IV.    Public Interest

As discussed above, Planned Parenthood has demonstrated that the Rule "likely" imposes an undue burden on a person's right to seek an abortion in South Dakota. There is a public interest in protecting the right to choose an abortion. And the public has a clear interest in ensuring the supremacy of the United States Constitution. While the public also has an interest in the enforcement of state administrative rules, that interest is secondary to the public interest expressed above. Thus, the court finds that this factor weighs in favor of granting the temporary restraining order.

## CONCLUSION

Planned Parenthood is likely to prevail on the merits of its case. Planned Parenthood and its patients face irreparable harm if the temporary restraining order is not granted. The balance of the harms is in Planned Parenthood's favor. And public policy favors granting a temporary injunction. Thus, it is

7

ORDERED that Planned Parenthood's motion for temporary restraining order (Docket 3) is granted. The state defendants are temporarily enjoined from enforcing South Dakota Administrative Rule 44:67:04:13, set to take effect January 27, 2022. This temporary restraining order shall remain in effect until the sooner of February 9, 2022, or further order of the court on the motion for temporary restraining order and preliminary injunction.

IT IS FURTHER ORDERED that an evidentiary hearing on the motion for preliminary injunction is set for Tuesday, February 1, 2022, at 9:30 a.m. in Sioux Falls, South Dakota. Counsel may appear by video conference.

Dated January 26, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE